Filed 6/23/11

# IN THE SUPREME COURT OF CALIFORNIA

DAWN RENAE DIAZ,                                 )
                                                 )
      Plaintiff and Respondent,        )
                                                 )            S181627
      v.                               )
                                                 )      Ct.App. 2/6 B211127
JOSE CARCAMO et al.,                             )
                                                 )      Ventura County
      Defendants and Appellants.       )  Super. Ct. No. CIV 241085
_____)

      A person injured by someone driving a car in the course of employment may sue not only the driver but that driver's employer. The employer can be sued on two legal theories based on tort principles: respondeat superior and negligent entrustment. Respondeat superior, a form of vicarious liability, makes an employer liable, irrespective of fault, for negligent driving by its employee in the scope of employment. The theory of negligent entrustment makes an employer liable for its own negligence in choosing an employee to drive a vehicle.

      If, as here, a plaintiff asserts both theories, and the employer admits vicarious liability for any negligent driving by its employee, can the plaintiff still pursue the negligent entrustment claim? The answer is "no," as we held in *Armenta v. Churchill* (1954) 42 Cal.2d 448 (*Armenta*). The Court of Appeal here held to the contrary. *Armenta*, it concluded, is inconsistent with this state's current system of allocating liability for tort damages based on comparative fault — a system created by decisions of this court in the 1970's and by the California electorate's later adoption of the Fair Responsibility Act of 1986 (Proposition 51). We disagree with

1

the Court of Appeal.  We therefore reverse that court's judgment and remand for a new trial.

## I

Plaintiff Dawn Renae Diaz was driving south on U.S. Highway 101 near Camarillo, Ventura County.  Defendant Jose Carcamo, a truck driver for defendant Sugar Transport of the Northwest, LLC, was driving north in the center of three lanes.  Defendant Karen Tagliaferri, driving in the center lane behind Carcamo, moved to the left lane to pass him.  As Tagliaferri, without signaling, pulled back into the center lane, her vehicle hit Carcamo's truck, spun, flew over the divider, and hit plaintiff's SUV.  Plaintiff sustained severe, permanent injuries.

Plaintiff sued Tagliaferri, Carcamo, and Sugar Transport.  She alleged that Carcamo and Tagliaferri had driven negligently and that Sugar Transport was both vicariously liable for employee Carcamo's negligent driving and directly liable for its own negligence in hiring and retaining him.  In their answer, Carcamo and Sugar Transport denied any negligence.

At trial, plaintiff's expert witness testified that Carcamo should have been in the right lane, should have monitored his mirrors better, and should have averted a collision by slowing or steering away as Tagliaferri entered his lane.  Plaintiff's counsel argued that Carcamo sped up to keep Tagliaferri from passing, noting Sugar Transport's failure to produce the chart from the truck's tachograph, which would have recorded Carcamo's speed, acceleration, and braking.  But another driver, who was the only nonparty witness to the collision between Carcamo and Tagliaferri, testified that Carcamo had not accelerated.  With respect to defendant Tagliaferri, her counsel conceded that she was partly at fault; defendants Sugar Transport and Carcamo contended that she alone was at fault.

Defendant-employer Sugar Transport offered to admit vicarious liability if its employee Carcamo was found negligent.  That admission, Sugar Transport

2

argued, would bar plaintiff from further pursuing her claims for negligent entrustment, hiring, and retention. In support, Sugar Transport cited *Jeld-Wen, Inc. v. Superior Court* (2005) 131 Cal.App.4th 853 (*Jeld-Wen*), in which a Court of Appeal, applying our holding in *Armenta*, *supra*, 42 Cal.2d 448, directed a trial court to dismiss a negligent entrustment claim after the defendant employer's admission of vicarious liability for its employee's driving.

Over defendant-employer Sugar Transport's objection, the trial court here admitted evidence of Carcamo's driving and employment history, as offered by plaintiff in support of her negligent hiring claim. The evidence showed two prior accidents involving Carcamo: one in which he was at fault and was sued, the other occurring only 16 days before the accident here. Other evidence showed that Carcamo was in this country illegally and had used a "phony" Social Security number to obtain employment, that he had been fired from or quit without good reason three of his last four driving jobs, that he had lied in his application to work for Sugar Transport, and that, when Sugar Transport had sought information from Carcamo's prior employers, the lone response gave him a very negative evaluation.

Sugar Transport opposed instructing the jury on plaintiff's negligent retention and hiring claims, arguing that its offer to admit vicarious liability barred such instructions. It also sought a mistrial, claiming the prior-accident evidence had been highly prejudicial. Its efforts failed. Before closing arguments, Sugar Transport stipulated with plaintiff to vicarious liability for employee-driver Carcamo's negligence, if any.

The jury found that defendants Tagliaferri and Carcamo had driven negligently, that defendant Sugar Transport had been negligent in hiring and retaining Carcamo as a driver, and that the retention was a cause of plaintiff's injuries. The jury allocated fault for the accident among all three defendants: 45 percent to Tagliaferri, 35 percent to Sugar Transport, and 20 percent to Carcamo.

3

It awarded plaintiff over $17.5 million in economic damages and $5 million in noneconomic damages. The trial court entered a judgment in the form required by the Fair Responsibility Act of 1986, enacting Civil Code sections § 1431.1–1431.5 and amending section 1431 (Proposition 51). Under the judgment, Tagliaferri and Sugar Transport were each jointly liable for all of plaintiff's *economic* damages but only severally liable for part of her *noneconomic* damages — Tagliaferri for 45 percent and Sugar Transport for 55 percent (its 35 percent plus its employee Carcamo's 20 percent).

The Court of Appeal affirmed. It acknowledged our 1954 holding in *Armenta*, *supra*, 42 Cal.2d 448, that if an employer admits vicarious liability for its employee's negligent driving, a plaintiff cannot rely on a negligent entrustment claim to introduce evidence of the employee's driving record. It also recognized that in *Jeld-Wen*, *supra*, 131 Cal.App.4th 853, another Court of Appeal had applied *Armenta* in directing dismissal of a negligent entrustment claim. The *Jeld-Wen* court rejected a claim that *Armenta*, which was decided "in 1954, before the 1970's development of comparative negligence rules," had been "adversely affected" by those rules. (*Jeld-Wen*, *supra*, at pp. 870–871.) The Court of Appeal here distinguished *Armenta* because it involved negligent entrustment rather than negligent hiring and it did not involve an allocation of comparative fault. And in disagreeing with *Jeld-Wen*, the Court of Appeal here stated (mistakenly) that *Jeld-Wen* had not "purport[ed] to deal with the allocation of fault required by Proposition 51."

Because the Court of Appeal's decision here conflicts with that in *Jeld-Wen*, *supra*, 131 Cal.App.4th 853, and casts doubt on the viability of our holding in *Armenta*, *supra*, 42 Cal.2d 448, we granted the petition for review of defendants Sugar Transport and Carcamo.

4

## II

Defendants contend the Court of Appeal erred in holding that this court's adoption of a comparative fault–based system for allocating tort liability (see *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804 (*Li*)) has undermined our holding in *Armenta*, *supra*, 42 Cal.2d 448. Under *Armenta*, they argue, employer Sugar Transport's offer to admit vicarious liability for any negligence of its employee-driver Carcamo required the trial court to withhold plaintiff's negligent hiring and retention claims from the jury, and to exclude the evidence plaintiff offered to support those claims, such as Carcamo's poor driving record and employment history, his dishonesty, and his status as an illegal alien and resultant use of a "phony" Social Security number to obtain employment. We agree, as explained below.

The respondeat superior doctrine makes an employer liable, irrespective of fault, for an employee's tortious conduct in the scope of employment. (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 209.) Such vicarious liability was at issue in *Armenta*, *supra*, 42 Cal.2d 448. In that case, as truck driver Dale Churchill was backing up, he hit a man, killing him. The man's survivors sued Dale and his wife, Alece, who owned the truck and employed Dale. (*Id.* at p. 451.) The plaintiffs alleged that Dale had driven negligently in the scope of employment and that Alece, aware of Dale's carelessness, had been negligent in entrusting the truck to him. (*Id.* at p. 456.) The defendants' answer admitted that Dale had been acting in the scope of employment at the time of the accident. At trial, the court excluded evidence of Dale's "37 traffic violations, including a conviction of manslaughter," as being "directed to an issue . . . removed from the case by the pleadings." (*Ibid.*) We upheld that ruling.

*Armenta* held that Alece's admission of vicarious liability made the negligent entrustment claim irrelevant. (*Armenta*, *supra*, 42 Cal.2d at p. 457.) Vicarious liability and negligent entrustment, we explained, were "alternative

5

theories under which . . . to impose upon [Alece] the same liability as might be imposed upon [Dale]." Alece's admission of vicarious liability, we stated, had removed "the legal issue of her liability . . . from the case" (*ibid.*) leaving "no material issue . . . to which the offered evidence could be legitimately directed." (*Id*. at p. 458.)

*Armenta*, *supra*, 42 Cal.2d 448, reflects the majority view among American jurisdictions. (Mincer, *The Viability of Direct Negligence Claims Against Motor Carriers in the Face of an Admission of Respondeat Superior* (2010) 10 Wyo. L.Rev. 229, 235.) But we decided *Armenta* nearly 60 years ago. Since then, marked changes have occurred in California law on the allocation of liability for tort damages among multiple wrongdoers. Before determining whether those changes affect our holding in *Armenta*, we summarize them in part III below.

## III

In 1954, when we decided *Armenta*, *supra*, 42 Cal.2d 448, California courts imposed tort liability for a plaintiff's injuries on an "all-or-nothing" basis. (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 583, 591–598 (*American Motorcycle*); *Li*, *supra*, 13 Cal.3d at pp. 809–811 & fn. 3.) At that time, juries "generally did not determine the relative degree or proportion of fault" of the parties. (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1196.) Instead, if "the plaintiff's fault had contributed in any measure to his own injury, his recovery was barred," while "every defendant found somewhat responsible for an indivisible injury, no matter how slight his or her fault, was liable for all the damages." (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 597 (*DaFonte*).)

In that system, once an employer admitted vicarious liability for an employee's tortious conduct within the scope of employment, it did not matter, for purposes of a plaintiff's recovery, whether a trial court submitted to the jury a negligent entrustment claim against the employer along with the negligence claim

6

against the employee. Either vicariously under the respondeat superior doctrine, or "directly" on a negligent entrustment claim, the employer would be liable for 100 percent of a plaintiff's damages, or else not liable at all.

In 1975, this court replaced the old all-or-nothing system of tort liability with a comparative fault system "under which liability for damage will be borne by those whose negligence caused it in direct proportion to their respective fault." (*Li*, *supra*, 13 Cal.3d at p. 813.) Under comparative fault principles, a plaintiff's negligence no longer bars recovery, but reduces "the damages awarded . . . in proportion to the amount of negligence attributable to the [plaintiff]." (*Id.* at p. 829.) Three years later, to ensure a similarly fair apportionment of damages *among tortfeasors*, we also eliminated the all-or-nothing character of the common law doctrine of equitable indemnity. (*American Motorcycle*, *supra*, 20 Cal.3d at p. 583.) We thus permitted "a right of partial indemnity, under which liability among multiple tortfeasors may be apportioned on a comparative negligence basis." (*Ibid.*) We declined, however, to eliminate the common law doctrine of joint and several liability, under which any defendant whose tort was *a* cause of an injury was liable for *all* of the plaintiff's damages. (*Id.* at pp. 582–583.) Thus, if one defendant proved to be insolvent, the burden of paying its share of damages fell on the other defendants, not the plaintiff.

In 1986, California voters further limited the all-or-nothing character of tort liability by adopting Proposition 51. To ensure that "defendants in tort actions shall be held financially liable in closer proportion to their degree of fault" (Civ. Code, § 1431.1, subd. (c)), Proposition 51 limits the scope of joint liability among tortfeasors. In cases "based upon principles of comparative fault," each defendant is liable for all the plaintiff's *economic* damages but only "for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault." (Civ. Code, § 1431.2, subd. (a).) For that purpose, a "defendant's percentage of fault" (*ibid.*) is "his or her proportionate

share of fault as compared with all fault responsible for the plaintiff's injuries." (*DaFonte*, *supra*, 2 Cal.4th at p. 603, italics omitted.)  Accordingly, "damages must be apportioned among [the] ' "universe" of tortfeasors' including 'nonjoined defendants.' " (*Ibid.*)

Because Proposition 51 applies only to "independently acting tortfeasors who have some fault to compare," the allocation of fault it mandates cannot encompass defendants "who are without fault and only have vicarious liability." (*Rashtian v. BRAC-BH, Inc.* (1992) 9 Cal.App.4th 1847, 1851 [Prop. 51 did not apply to car owner vicariously liable for permissive user's negligence]; see *Srithong v. Total Investment Co.* (1994) 23 Cal.App.4th 721, 728 [Prop. 51 did not apply to property owner liable vicariously for contractor's negligence].)

One type of defendant excluded from allocations of fault under Proposition 51 is an employer who faces only vicarious liability under the respondeat superior doctrine for torts committed by its employees in the scope of employment.  (*Miller v. Stouffer* (1992) 9 Cal.App.4th 70, 83.)  In a case involving such an employer-defendant, the " ' "universe" of tortfeasors' " among whom the jury must apportion fault (*DaFonte*, *supra*, 2 Cal.4th at p. 603) does not include the employer.  Instead, the employer's share of liability for the plaintiff's damages corresponds to the share of fault that the jury allocates to the employee.  (*Miller v. Stouffer*, *supra*, 9 Cal.App.4th at p. 83.)  An employer liable solely on a theory of respondeat superior can thus have no greater fault than its negligent employee acting in the scope of employment.  The question here is whether plaintiff's assertion of an *additional* claim against the employer — for negligent entrustment, hiring, or retention — requires a different approach to allocating fault.  We explore that issue in part V, after addressing certain preliminary issues in part IV below.

## IV

The Court of Appeal here distinguished *Armenta*, *supra*, 42 Cal.2d 448, on the ground that it involved negligent entrustment, while this case involves negligent hiring. This distinction fails. A claim that an employer was negligent in hiring or retaining an employee-driver rarely differs in substance from a claim that an employer was negligent in entrusting a vehicle to the employee. Awareness, constructive or actual, that a person is unfit or incompetent to drive underlies a claim that an employer was negligent in hiring or retaining that person as a driver. (See Judicial Council of Cal. Civ. Jury Instns. (2010) CACI No. 426.) That same awareness underlies a claim for negligent entrustment. (See CACI No. 724.) In a typical case, like this, the two claims are functionally identical. We now consider plaintiff's forfeiture claims.

Plaintiff contends that defendant-employer Sugar Transport has forfeited its right to invoke our holding in *Armenta*, *supra*, 42 Cal.2d 448, by not admitting vicarious liability *before* trial, as did the defendants in *Armenta* and in *Jeld-Wen*, *supra*, 131 Cal.App.4th 853. Neither decision, however, required such admissions to be made *before* trial.

If, as here, all of a plaintiff's causes of action depend on a contention that an employee's negligent driving in the scope of employment was a cause of the plaintiff's injuries, and if the defendant-employer offers to admit vicarious liability for its employee's negligent driving, then that offer will "remove[] from the case" the issue of the employer's liability for any damage caused by its employee's negligent driving, leaving no "material issue" to which negligent entrustment evidence can be relevant. (*Armenta*, *supra*, 42 Cal.2d at pp. 456–457.) It makes no difference that here defendant-employer Sugar Transport offered to admit vicarious liability at trial instead of before.

9

Plaintiff also claims that defendant-employer Sugar Transport forfeited its right to invoke the holding of *Armenta*, *supra*, 42 Cal.2d 448, by *not* moving to bifurcate the trial into two separate parts: one pertaining to the negligent driving cause of action against Tagliaferri and employee-driver Carcamo, and the other on the negligent hiring and retention causes of action against Sugar Transport. But, as we held in *Armenta*, and as we affirm in this decision, an employer's admission of vicarious liability for its employee's negligence makes claims of negligent entrustment, hiring, or retention irrelevant. Thus, no reason exists to try such claims at all, whether separately from the negligence claim or at the same time.

**V**

We now consider whether our 1954 holding in *Armenta*, *supra*, 42 Cal.2d 448, has been undermined by this court's later adoption of comparative fault principles (see pp. 6–7, *ante*) and by the California electorate's adoption of Proposition 51, with its related limit on joint liability (see p. 7, *ante*). *Armenta* held that if a plaintiff sues a driver's employer on theories of respondeat superior and negligent entrustment, the employer can, by admitting liability on the first claim, bar the second. (*Id.* at p. 457.) Citing *Armenta*, defendant-employer Sugar Transport here argues that its offer to admit vicarious liability for any negligent driving by its employee, Carcamo, barred plaintiff from pursuing claims of negligent hiring or retention, and that the Court of Appeal erred in concluding otherwise. Plaintiff responds that in cases like this in which Proposition 51 requires an allocation of fault among multiple tortfeasors, *Armenta* is inconsistent with the principles of comparative fault adopted after *Armenta*.

Plaintiff asserts that if Proposition 51 applies to limit a defendant's liability for noneconomic damages, necessitating an allocation of fault, then the principles of California's comparative fault system require the trial court to include both the employer *and* its employee-driver in the " ' "universe" of tortfeasors' " to whom

10

the jury will allocate fault (*DaFonte*, *supra*, 2 Cal.4th at p. 603). It logically follows, according to plaintiff, that the jury can hold an employer responsible for *two* shares of fault: one based on the employee's negligent driving in the scope of employment, for which the employer is liable vicariously, and one based on the employer's own negligence in choosing a driver, for which the employer is liable "directly." To exclude the employer's independent fault for its negligence in hiring and retention, plaintiff argues, would distort the process of allocating fault by removing a party who is at fault from the universe of tortfeasors. We disagree.

In 2005, the Court of Appeal in *Jeld-Wen*, *supra*, 131 Cal.App.4th 853, rejected a similar argument. Negligent entrustment, that court reasoned, may establish an employer's own fault but " '*should not impose additional liability*' "; instead, " '*the employer's liability cannot exceed* [*that*] *of the employee.*' " (*Id.* at p. 871, italics added by *Jeld-Wen*.) We agree. As *Jeld-Wen* noted, if an employer admits vicarious liability for its employee's negligent driving in the scope of employment, "the damages attributable to both employer and employee will be coextensive." (*Ibid.*) Thus, when a plaintiff alleges a negligent entrustment or hiring cause of action against the employer and the employer admits vicarious liability for its employee's negligent driving, the universe of defendants who can be held responsible for plaintiff's damages is reduced by one — the employer — for purposes of apportioning fault under Proposition 51. Consequently, the employer would not be mentioned on the special verdict form. The jury must divide fault for the accident among the listed tortfeasors, and the employer is liable only for whatever share of fault the jury assigns to the employee.

Disagreeing with *Jeld-Wen*, *supra*, 131 Cal.App.4th 853, the Court of Appeal here reasoned: Negligent hiring or retention claims entail not vicarious but direct liability, which is based on an employer's independent fault for the distinctly culpable act of entrusting a vehicle to an employee who the employer should know

11

is unfit to drive safely; Proposition 51 requires a jury to apportion fault among all defendants to ensure that all bear responsibility for noneconomic damages "in proportion to their degree of fault" (Civ. Code, § 1431.1, subd. (c)); therefore, a negligent hiring or retention claim can "impose[] greater responsibility on Sugar Transport than would be attributed to it for simply being Carcamo's employer," as Sugar Transport is liable both vicariously for Carcamo's fault and directly for its own, independent fault. Excluding proof of negligent hiring or retention, the Court of Appeal held, makes it "impossible" to allocate fault as Proposition 51 requires, because the allocation cannot include all defendants who bear independent fault.

No matter how negligent an employer was in entrusting a vehicle to an employee, however, it is only if the employee then drove negligently that the employer can be liable for negligent entrustment, hiring, or retention.[1] (*Jeld-Wen*, *supra*, 131 Cal.App.4th at pp. 863–864.) If the employee did not drive negligently, and thus is zero percent at fault, then the employer's share of fault is zero percent. That is true even if the employer entrusted its vehicle to an employee whom it knew, or should have known, to be a habitually careless driver with a history of accidents.

---

[1] We can conceive of instances in which the employer may be liable for negligence independent of its employee, for example, when the employer provides the driver with a defective vehicle. Here, however, plaintiff's theory of employer Sugar Transport's separate liability was based solely on the theory of employer negligence in hiring and retaining Carcamo as a driver. As Sugar Transport's admission of vicarious liability triggered the principles of *Armenta*, *supra*, 42 Cal.2d 448, we need not address other theories of employer liability, separate from and independent of the employee-driver's negligence.

We note that in *Syah v. Johnson* (1966) 247 Cal.App.2d 534, the Court of Appeal upheld an employer's liability for negligent entrustment when the employee was found not to have been negligent. We express no views on whether *Syah* was decided correctly. We disapprove *Syah* to the extent it is inconsistent with the views expressed here.

Comparative fault "is a flexible, commonsense concept" adopted to enable juries to reach an " 'equitable apportionment or allocation of loss.' " (*Knight v. Jewett* (1992) 3 Cal.4th 296, 314.)  If, as here, an employer offers to admit vicarious liability for its employee's negligent driving, then claims against the employer based on theories of negligent entrustment, hiring, or retention become superfluous.  To allow such claims in that situation would subject the employer to a share of fault *in addition to* the share of fault assigned to the employee, for which the employer has already accepted liability.  To assign to the employer a share of fault greater than that assigned to the employee whose negligent driving was a cause of the accident would be an inequitable apportionment of loss.

Our conclusion finds support in certain decisions of other state courts that have adopted or retained the majority rule that a defendant-employer's admission of vicarious liability bars claims for negligent entrustment, hiring, or retention. The relevant decisions fall into two categories:  (1) those in which a state court that already used a system of comparative fault *adopted* the majority rule (*McHaffie v. Bunch* (Mo. 1995) 891 S.W.2d 822, 826; *Willis v. Hill* (Ga.Ct.App. 1967) 159 S.E.2d 145, 160, revd. on other grounds (Ga. 1968) 161 S.E.2d 281) and (2) those in which a state court, having first adopted the majority rule and having later adopted comparative fault, then chose to retain the majority rule, as we now do (*Gant v. L.U. Transport, Inc.* (Ill. App. 2002) 770 N.E.2d 1155, 1159–1160; *Loom Craft Carpet Mills, Inc. v. Gorrell* (Tex. App. 1992) 823 S.W.2d 431, 432).

Plaintiff insists that the "fault" to be compared in allocating comparative fault is moral fault, and that negligently entrusting a vehicle to an employee involves moral culpability distinct from the moral culpability of the employee for driving negligently.  Defendants respond that when a jury compares "fault," it primarily compares the degree to which each party's conduct contributed causally to plaintiff's injuries.  We need not here address in the abstract the relative roles of

13

moral culpability and causation in the law of comparative negligence or fault. As discussed *ante* at page 13, the objective of comparative fault is to achieve an equitable allocation of loss. That objective is not served by subjecting the employer to a second share of fault in addition to that assigned to the employee and for which the employer has accepted liability.

To summarize, we reaffirm our holding in *Armenta*, *supra*, 42 Cal.2d 448, that an employer's admission of vicarious liability for an employee's negligent driving in the course of employment bars a plaintiff from pursuing a claim for negligent entrustment. Therefore, the trial court here erred in not applying that holding to this case. We now turn to defendants' contention that the error prejudiced them.

## VI

To establish prejudice, a party must show "a reasonable probability that in the absence of the error, a result more favorable to [it] would have been reached." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.) We explore that issue below.

To show that Sugar Transport's driver, Carcamo, was prone to drive negligently (which was relevant to plaintiff's negligent hiring and retention claims against Sugar Transport), plaintiff offered evidence of his past accidents, including one in which he was at fault and another that had occurred just 16 days before the accident here. To further support her negligent hiring claim, plaintiff offered evidence of Carcamo's poor employment record: As a person illegally in this country, he had used a false Social Security number to get hired; he had been fired from (or quit without good reason) three of his last four driving jobs; and he had lied in his application to work for Sugar Transport. In addition, plaintiff presented extensive testimony about Sugar Transport's inadequate hiring practices, thereby making the company appear indifferent to the need to screen or train drivers for

14

safety. That testimony showed, for example, that when Sugar Transport hired Carcamo, it did not make adequate efforts to get evaluations of him from his past employers and it ignored the one evaluation it did receive, which was very negative.

All of that evidence should have been excluded after Sugar Transport offered to admit vicarious liability. Had that evidence been excluded, and had the special verdict form not listed defendant-employer Sugar Transport as a separate tortfeasor from defendant-employee Carcamo, it is reasonably probable that the jury would have reached results more favorable to one or both defendants on two issues, as explained below.

The first issue on which the jury would probably have reached a different result is whether employee Carcamo drove negligently in this case. Evidence of an employee's past accidents (admitted here to support the negligent hiring claim against employer Sugar Transport) is highly prejudicial to the defense of a negligent driving claim against the employee. Such evidence creates a prejudicial risk that the jury will find that the employee drove negligently based *not* on evidence about the accident at issue, but instead on an inference, drawn from the employee's past accidents, that negligence is a trait of his character. (See *Jeld-Wen*, *supra*, 131 Cal.App.4th at p. 862, fn. 5; *id.* at pp. 866–867, citing Evid. Code, § 1104.) Accordingly, had the trial court not made the errors noted above, it is reasonably probable that the jury would have reached a result more favorable to both Carcamo and Sugar Transport on the question of whether Carcamo drove negligently.

The second issue on which the jury would probably have reached a different result but for the trial court's error is its allocation of fault. As to this issue, however, the trial court's error prejudiced only Sugar Transport, not Carcamo. The jury assigned defendant Tagliaferri 45 percent of the fault, employee-driver Carcamo 20 percent, and employer Sugar Transport 35 percent. That allocation made Sugar Transport liable (directly or vicariously) for 55 percent of the fault.

15

Had the trial court correctly listed only the drivers (that is, Carcamo and Tagliaferri) on the verdict form as tortfeasors to whom the jury could assign shares of fault, employer Sugar Transport's only source of liability would have been its *vicarious* liability, under the doctrine of respondeat superior, for the share of fault assigned to employee Carcamo. In that case, the jury might well have assigned to Carcamo *alone* less than the 55 percent share of fault that it assigned to both him and Sugar Transport *together*, thereby reducing Sugar Transport's total liability. In other words, being responsible for only one out of two shares of fault (rather than two out of three shares of fault) would probably have worked in Sugar Transport's favor.

This conclusion is supported by several facts. First, defendant Tagliaferri's counsel admitted that his client was at fault in the accident. Second, both Carcamo and the only nonparty witness to the accident testified that Tagliaferri pulled into Carcamo's lane without signaling, and that Carcamo never changed speed. (Tagliaferri's injuries left her with no recollection of the accident.) Third, the jury's allocation of fault shows that it considered Tagliaferri to be more at fault than Carcamo. Indeed, the jury assigned to Tagliaferri over twice the fault (45 percent) that it assigned to Carcamo (20 percent). We therefore perceive a reasonable probability that, had the trial court excluded the prejudicial evidence and arguments presented by plaintiff's counsel, and instructed the jury to divide fault between Carcamo and Tagliaferri alone — rather than including Carcamo's employer, Sugar Transport, among the tortfeasors to whom it could allocate fault — the jury would have assigned to Carcamo alone *less* than the 55 percent share of fault that it assigned to both him and Sugar Transport together. Although Sugar Transport would still have been responsible for the share of fault assigned to Carcamo, the result would have been more favorable to Sugar Transport, because Sugar Transport would have had no additional, independent liability.

16

**DISPOSITION**

We reverse the judgment of the Court of Appeal and direct that court to reverse the trial court's judgment and remand the case for a complete retrial.


KENNARD, J.

WE CONCUR:


CANTIL-SAKAUYE, C. J.
BAXTER, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
ALDRICH, J.*

---

\* Associate Justice of the Court of Appeal, Second Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Diaz v. Carcamo

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 182 Cal.App.4th 339
**Rehearing Granted**


_____

**Opinion No.** S181627
**Date Filed:** June 23, 2011

_____

**Court:** Superior
**County:** Ventura
**Judge:** Frederick Bysshe


_____

**Counsel:**

Sonnenschein Nath & Rosenthal, SNR Denton US, Paul E. B. Glad, David R. Simonton; Jones Day, Elwood Lui and Peter E. Davids for Defendants and Appellants.

Horvitz & Levy, H. Thomas Watson and Karen M. Bray for The California Association of Counties Excess Insurance Authority, Association of California Insurance Companies and The American Insurance Association as Amici Curiae on behalf of Defendants and Appellants.

Fred J. Hiestand and Erika C. Frank for The California Chamber of Commerce and The Civil Justice Association of California as Amici Curiae on behalf of Defendants and Appellants.

Harmeyer Law Group, Jeff G. Harmeyer for Jeld-Wen, Inc., and California Trucking Association as Amici Curiae on behalf of Defendants and Appellants.

Grassini & Wrinkle and Roland Wrinkle for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Elwood Lui
Jones Day
555 South Flower Street, 50th Floor
Los Angeles, CA  90071-2300
(213) 489-3939

Roland Wrinkle
Grassini & Wrinkle
20750 Ventura Boulevard, Suite 221
Woodland Hills, CA  91364-6235
(818) 348-1717